Please all rise. Here to you, here to you, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable William C. Brennan will now preside.  Your Honor, the third case on the docket this morning is 2-21-0521, City of Rockford, Illinois, plaintiff's appellant, the Jeffrey A. Giles, defendant's appellee. Mr. Brennan, are you in on behalf of the appellant, Mr. Rufani Rufani? Are you in on behalf of the appellee, Mr. Jeffrey Sherman? Are both sides ready to proceed? Yes, Your Honor. All right, Mr. Rufani, you may proceed. Good morning, Your Honors. Counsel, may it please the Court, I'm Nephi Mulvin, and I represent the City of Rockford. The trial court committed two principal errors in its decision below. First, it ruled that equitable tolling applied to extend the two-year statute of limitations under 2-1401C of the Court of Civil Procedure. And then second, by finding that there was sufficient evidence of defendant's due diligence to support the application of equitable tolling and also to allow defendant relief under Section 2-1401, we asked the Court to reverse that decision for two reasons. First, it's a position that the statutory scheme of Section 2-1401 precludes the doctrine of equitable relief. And then second, even if the doctrine of equitable relief applies, it's a position that the record does not support defendant's due diligence, even for the application of the doctrine of equitable tolling. Are you saying preliminarily that the doctrine of equitable tolling does not, as a matter of law, apply here? That is correct, Justice Sotomayor. And why do you take that position? We take that position because of the entire statutory scheme of Section 2-1401. First of all, Section 2-1401 has its own statute of limitations. 1401C states specifically that the petition under the section must be filed within two years. It has two exceptions. The entire section has essentially what would be three exceptions. Well, I think the other side quite candidly has conceded that technically it was not filed within two years. That's correct. I think they've acknowledged that, right? That's correct. Okay. But go on with the other parts of the argument. And our argument is that those exceptions, that may apply to excuse that just do not apply here. First, legal disability or some fraudulent concealment or some sort of duress that would have prevented the petitioner from coming in on time, that do not apply here. So you accept that equitable tolling is a doctrine that has been applied as it relates to other statutes of limitations in Illinois? That is absolutely correct. So what's different here? Your Honor, we believe that from the cases that we've looked at, especially the most recent Illinois Supreme Court decision earlier this year, the Alvarez case, the way the courts have looked at it, 1401 already gives an opportunity to challenge a judgment. So equitable tolling would add a gloss to what essentially the General Assembly had already decided would be the scheme for vacating or undermining a judgment. There's an interest in finality of judgments. But here you have a judgment going back a little bit further. Within 30 days, you've been moved and vacated. Then after that, you have two years. And after, you know, within those two years, there are certain exceptions. Otherwise, the finality of judgments would really be an issue. And in some circumstances, the courts would look. As we know, you have a critical tolling usually where a defendant is already plaintiff is coming in to say, hey, I couldn't file my case on time because of these circumstances. That's not usually what we find in a 1401 situation, especially what we have here. So is it the city's position that irrespective of how compelling the personal circumstances may be, the law does not recognize that under 1401? Is that your position? Well, our position is that looking at the cases that we've reviewed, that the answer would likely be no, considering the first, you know, the Petitioner or potential Petitioner would have had two years, two years to come before the court, and unless there are some unusual circumstances which would have existed. But in the 1401 case ---- Well, we haven't seen cases that fall under, because the buckets that the cases we've looked at, legal disability, some sort of duress, some sort of fraudulent concealment, and considering that in this case, this is a quasi-in-ramp jurisdiction that the circuit court exercised here, we're talking about a property, not personal injuries, one that we may have, for example, say a non-sophisticated party or something like that. This is a special situation. But even getting to the facts, our position is that the defendant here did not put enough on the record to even give the court, assuming, assuming even that equitable tolling applies, we know the elements of that particular doctrine. So, you know, defendant actively misled the plaintiff and that the plaintiff was prevented in some way, and then maybe the plaintiff or Petitioner asserted their right in the wrong forum. But the principal thing about equitable tolling being an equitable relief is due diligence, and that's the second part of our argument. Before you go there, did you find any cases that allowed equitable tolling in a 214-01 case? No. You know, Justice Shostak, our research did not reveal any case that applied equitable tolling. In fact, the cases that we found spoke clearly that it's an entire statutory scheme, the entire 1401, and if you could go beyond, there are already accommodations in that statutory scheme for Petitioners who for one reason or the other are unable to participate in the original proceedings or find out about these proceedings shortly thereafter within a reasonable time, otherwise it would appear that judgments would never, where litigation will never end. Does the record anywhere indicate one way or the other whether the doctor received any of these special assessment claims that were recorded over the course of 13 years? Your Honor, the record doesn't show that he received them. The record shows that they were sent. They were sent to which address? To the address that the property, the owner's address as maintained in the, I believe, the register. The Colorado address. And as I indicated, as plaintiff, sorry, defendant indicated in his affidavit before the court below, he moved there since 2005, had lived at the same address, may have moved away for work, but there was no communication with the city, but that he had, that he goes out of the state for work. He always maintained that he's lived there. I guess the underlying point remains that these notifications were sent to that address. Defendant doesn't contend that that's not his address. It was sent by mail and over a period of time admitted. Over what period of time were they sent in the mail there? Do you know? Not off the top of my head, but what I can say is that from 2005, that appeared to be the address that had been on the registry, and that had been the address to which notifications of mail were sent. However, there's no evidence that the doctor was attempting to evade or avoid service, is there? There is no evidence. There is no evidence. If anything, the way we position our argument is that there's just a lack of due diligence here. There's no intent to evade or avoid, but considering that, you know, we all have responsibilities in checking the mail to pay for bills and all that, that this is one of those things that should have come up and that a reasonable view. So let me ask you this. I take it you made before the trial court a similar argument, that the 2-1401 statutory scheme does not allow for equitable tolling. What did the trial court rule in response to that argument? The trial court ruled that, that the first ruling, that considering that the circumstances, the personal circumstances of the defendant, and there's also a mention of the COVID pandemic, that that also all in would bring essentially the defendant close enough and allow equitable tolling to apply. Of course, we disagree with that decision for two reasons. First of all, we believe that the affidavit that the defendant filed was vague, was generalized, not specific enough as such for the court to really consider that argument. There may be some argument there. We cited on some cases from outside of the state where they looked at these petitions or some claims regarding how the COVID pandemic or the shutdown had affected their ability to participate in proceedings. So the city, I apologize, the doctor finds out that he doesn't get his property tax bill. And this is before the two-year period runs. And then the argument is that he hires a lawyer who goes to the title company. And the title company says it's having difficulty because of COVID and shutdowns and whatnot. But was there any detailed discussion in court, or is there anything in the record that gives the specifics as it relates to the clerk's office was closed from X date to Y date, or the court system was closed, or if I called, no one would be there to talk to me to explain why I'm no longer the owner of this property. Was there anything along those lines in the affidavits or in the record that would help us in that regard? There's nothing, Justice, and that's a principal part of our argument. Because even if the court were to say, well, this makes a single exception, the court is still left with speculation and supposition. There aren't enough things for the court to hold on. If it were, if we had an affidavit that went into details as to the exact, approximately the exact date, you know, on or before a certain date, that's when the doctor found out about this and then called the attorney on this particular date, and they reached out to the office on a particular date. And most of those offices had publications as to even when they were closed to physical visitors, all their avenues to reach them. So all that information, I think, would have helped the court to really weigh in here and see if there is any avenue to exercise its equitable jurisdiction. How much money did the city allege they were out for this maintenance of the property? How much money was involved? Not off the top of my head. I'll have to look. Something like $23,000? Somewhere along those lines, yes. And so notices were being sent to him with respect to that as well, were alleged? Over the period of time, that's usually the course of business, I suppose. That's what they do. They mow, they get the deans to report them, and consistent with... And what's your estimate as to the value of this property? What's the fair market value, do you think, of this property? I wouldn't be qualified to give that opinion. Well, part of it's been sold, right? Part of it... There are two parcels that are not adjoining. One is closer to a major street, the other not so much. Interestingly, the smaller parcel is closer to the major street. And the city signed a contract for sale, which currently is not... We've essentially stayed waiting for the outcome of this. What was that contract value? I believe it was $200,000 and something, maybe $202,000. So back to this concept of equity, if we will. It's ten times the value of one, just for one of the two parcels. Well, regarding the concept of equity, we look at it from two aspects. First, bar the contract that the city had entered, maybe we may not be here because there's always a concern that if the city were to enter a contract with a third party, the third party may turn around and possibly sue the city for not delivering the title. So that's one aspect of it. If it were just the city, maybe slightly different. The other aspect of the equity consideration we would, as a court, consider is the finality of the judicial deed. The city went through all the hoops, did everything right, tried to serve personally, sent documents by mail, obtained this notice of seal, sent it to the address. The question is what else would the city have done? And if the defendant was not at his house to check his mail, et cetera, there's very little the city would have done. Of course, the city is not in the realistic business of selling property, and the main interest of the city in opposing the 1401 motion is not to enforce just some business interest. It's just those two interests. First, the contractual obligation, and then secondly, the judicial deed, because the city, in its course of business, uses these and foreclosures to maintain property within the jurisdiction of the city. So that's really the city's interest, as it were, here. All right, Mr. McAbana, thank you. We'll give you an opportunity for rebuttal. Thank you very much. May it please the Court. Michael Shurrock of Guyana-Knighton in Rockford, appearing for the appellee. I believe the first question to the city dealt with whether or not equitable tolling could apply to 214-01. The city's argument is that there's express provisions where it won't apply, therefore nothing else can apply. Our Supreme Court in Williams v. Board Review says that case law indicates that the inclusion of an express tolling provision that operates in limited situations does not necessarily preclude equitable tolling in other situations. This is an equitable matter. The Court's equitable jurisdiction in Chancery is not limited by anything the legislature can do, since that's a judicial province, and the question is that. But doesn't 214-01 set out specific basis for the tolling of the statute? Disability. Correct. Legal disability. There are specific provisions for tolling. Jurassic. Fraud. We take the position. Fraudulent concealment. I'm sorry, Your Honor? Fraudulent concealment. Those are the three reasons that those are the tolling basis for coming in and vacating or tolling. So how does equitable tolling allow us to disregard the limitations under 214-01? And don't we have to make it clear showing? First of all, there's no case law on whether equitable tolling will apply to 214-01 at all. None at all? None at all. The city hasn't found it. We haven't found it. Counsel, is this a case of first impression done in Illinois? Is that what you're saying? This particular issue is a case of first impression. We believe that's the case, yes, Your Honor. Plus add into the fact that COVID is the cause of this with court shutdowns and, yes, what dates it was cut down, what the court was shut down. We submitted an affidavit from the petitioner that due to the circuit clerk's office and the recorder's office being shut down, the title company was unable to get information in time despite repeated requests from counsel. This was argued in 2020, which was right at that time, and the trial judge knew when she had been and not been able to conduct court and when the courthouse was closed and the attempts to bring things back online by having remote appearances and all. So this is unique and true. It's a case of first impression as to whether equitable tolling will apply to a 214-01 action. And secondly, I won't say this is a once-in-a-lifetime because COVID hasn't happened anything like that since 1917 for the Spanish flu. That's more than a lifetime. That's more than a century. This may be an event that is a once-in-the-history-of-the-state-of-Illinois event. So the equitable tolling cases that I'm familiar with, they typically are a plaintiff with a cause of action that's, for some reason, they didn't file in time. And equity allows for that. And there aren't a lot of equitable tolling cases, either. But they're all plaintiffs who missed the boat for some reason that was compelling for the court. But not a 214-01. But we have a competing public policy here. We have a public policy that, at some point, says there has to be a finality in judgments. Otherwise, we're forever at this practice. And is that not a compelling, competing public policy that might defeat the application of the doctrine in the 214-01 context? It is a compelling public policy. But, again, we're faced with COVID, which is a once-in-a-millennium event. And even the cases that talk about the rarity of applying equitable tolling speak also in terms of when there's an irremediable inability to gather information. And that's what happened here. With the government offices shut down by order, we couldn't get the ‑‑ This was ‑‑ COVID started in March. This was basically in November, right? Around August. When did the doctrine ‑‑ That's correct. That is correct. So, I mean, I just am going based on my recollection. And that's what I'm stuck with because the affidavit is pretty vague. But by November, people were answering phones in public offices. And I understand wanting to dot the I's and cross the T's as it relates to the title policy or having them do a title search. But it seems to me you could probably pick up the phone and find out the reason why this wasn't in the doctor's name anymore. And you wouldn't need the title search and all that to file the two. There was still time to file a claim within the two-year limitations period. There was, Your Honor. But we didn't know what case to file it in. We have no idea why the city of Rockford all of a sudden showed up entitled. Was it eminent domain? Did anyone pick up the phone and call the city and ask? I recognize that's an unfair question. But I ask it only because of the vagueness of the affidavit and whose burden it is. I think it's a fair question. But lawyers are advised never ask a question you don't know the answer for. And the Williams case also says we can't fault you for gathering your information before you act so you don't act prematurely. And as a practical matter, it really could have been a forged deed, a tax deed, eminent domain, or what it was. But all those would have been different cases. And a forged deed wouldn't even have a case to bring a 214-01 in. It would be a brand-new action. So without knowing where do we go for relief, I don't think we can be told we should have picked up the phone and called. Well, how about your affidavit? It was not very specific with respect to dates. It was not. It was not. That's true. But, again, the Williams case recognizes that the affidavit and the petition there uses terms like promptly and immediately with no date specified. And as long as the other side hasn't said that's not enough, we want you to prove this, which hasn't been done here, the little evidence there is it was done promptly. It was done immediately. That means that in normal parlance it was done within a reasonable period of time. It wasn't done a year later. It wasn't done months and months later. Counsel, can you tell us how the doctor was monitoring this property over the years in terms of maintenance, liens, title issues? How was the doctor monitoring what was going on with this property? Well, the only liens were the liens by the city of Rockford. The land was otherwise free and clear. The taxes were paid, and it was online. You can go to the treasurer's office online and see your bill and make the payment. And that was done in 2019, 2018, 2017 for a long period of time. The doctor paid his bills despite the fact that he lived in Colorado. Who was maintaining this property for him? I'm sorry? Was there somebody maintaining the property for him? Cutting the grass. It's not in the record. It's vacant land. As a matter of fact, there was somebody for a while, but there's nothing in the record to indicate that he had somebody who notified him that it wasn't being done or that he had any reason to not know about it. The other thing that's not in the record is any suggestion on the doctor's part that he never received these notices about the...  Wait a minute, no. The notice about the bills for the mowing over the 13 years, did the doctor ever anywhere that he never received those? There's nothing in the record, but to my knowledge, he did not. But it's not. I don't know that there's any requirement that a municipal lien that's filed, you give notice to the property owner. Filing is public notice, and most of the time if you file a lien like that, you expect to get paid when it's sold. Or if you run up to the period of limitations, you bring a foreclosure, which the city did. And that puts us right, here we are at 214.01. Should the two years be told? We're eight days late. And if it's told, does 214.01, do the circumstances here justify 214.01 relief? As your Honor said, 10 times the value. It might even be more than that, because the city is in-house counsel, so I don't know what their attorney's fees are, but the liens total 12,000. The sale was for 200 plus thousand, and the affidavit of the owner is that it's worth up to a million dollars. That's a huge forfeiture. Equity abhors a forfeiture of that size. The trial court found in the 214.01 that there was excusable neglect, no evidence that he actually had notice. We're not saying the city did anything wrong and didn't publish with the local paper and didn't mail. We agreed that all of that was done. 214.01 wouldn't apply if those things had worked. 214.01 applies because he didn't have actual notice. When he learned about it, he acted promptly. And the third thing is a justifiable, a meritorious defense. A minuscule amount compared to the value of the property. A physician who's ready, willing, and able to pay that fee. If you're in foreclosure, the defense is, here's the money I owe you. I mean, that would have been done from the beginning. We've taken the position that we're happy to pay. Tell us how much, with interest, with everything. We don't want the city to lose anything on this. We want him to be made whole. But we also don't want the property owner to suffer a tremendous forfeiture. Thank you. Thank you, Mr. Burke. Mr. McDonough. Thank you very much, Justice. Just a few points. I don't fully agree that this is a case of first impression. I think that the cases that exist and the way the statute is structured is sufficient to guide this court without breaking new ground or making new law. As to whatever role COVID may have played, I still think that the absence of details in the affidavit and in the arguments and the briefings, it is enough for the court not even to go down that route. Regarding calling the city of Rockford, I think that that goes clearly to the lack of due diligence, just picking up the phone to call the city legal department to ask about this specific property. You have the details. You have the prior owner. You know the location of the property. I think that at least that attempt would have been at least one mark on the side of due diligence. The question was asked to Mr. Shurek about whether or not his client received notices from the city concerning the mowing, et cetera. Do you have an answer to that? Your Honor, off the top of my head, I cannot answer one way or the other, but I recognize that it has to be either some state law or ordinance which requires sending a notice, either a notice as to the condition of the property before it's mowed or some sort of notice to the owner of the property after it is mowed for payment or to register the lien in some way. But off the top of my head, I just cannot pick up where in the record. The record doesn't suggest it. Okay. No, no, I'm asking. Off the top of my head, I just cannot recall. But what I know for certain is that when this litigation started, the notices from this litigation were sent, or rather the original proceedings were sent to an address where he's maintained he's always lived at for all relevant time. There was a question about who was maintaining the property. The case, the original proceeding was for closure of mowing liens, so I think that answers the question. There's no support that anyone was maintaining the property in Illinois. Counsel talked about actual notice. I don't see that in any of the cases or in the statute that that's a basis for any of the arguments that have been advanced here today. So it's still our position that equitable tolling does not apply to 1401 proceedings, and even if it does, it just isn't on any facts, sufficient facts in the record to sustain the circuit court's decision. So we ask the Court to reverse and remand. Thank you, Justice. All right. The Court thanks both sides for spirited arguments. The matter will be taken under advisement, and a decision will be rendered in due course. Thank you very much.